IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| JAYSON DWAYNE WHEATLEY, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CR 122-031 |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

---

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

---

Petitioner, an inmate at Coleman Medium Federal Correctional Institution in Coleman, Florida, filed a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. Respondent moved to dismiss the § 2255 motion, and Petitioner filed his opposition. For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** the motion to dismiss be **GRANTED**, (doc. no. 274), the § 2255 motion be **DISMISSED** without holding an evidentiary hearing, this case be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

## I.     BACKGROUND

### A.     Indictment

On April 6, 2022, the government charged Petitioner and six co-defendants in a twenty-one-count indictment alleging an overarching conspiracy to possess with intent to distribute and to distribute controlled substances, including 500 grams or more of a mixture containing a detectable amount of methamphetamine, 50 grams of methamphetamine (actual), and an

amount of heroin and marijuana.  (See doc. no. 3.)  The indictment named Petitioner in ten of those twenty counts, to include a count of possession of ammunition by a convicted felon.  (See id.)  The most severe sentence Petitioner faced if convicted on the drug charges in Counts One and Seven was up to life in prison, and not more than ten years in prison on the felon in possession of ammunition charge in Count Twenty.  (See doc. no. 4.)  Petitioner retained attorney Charles H. Rollins to represent him.  (See doc. nos. 25, 26.)

>        **B.**    **Guilty Plea**

Pursuant to a written plea agreement, Petitioner pled guilty to Count One, conspiracy to possess with intent to distribute and to distribute controlled substances, including 50 grams or more of methamphetamine (actual) and an amount of heroin.  (See doc. no. 121 ("Plea Agreement").)  In exchange, the government agreed to:  (1) move for an additional one-point reduction under the Sentencing Guidelines if the Court determined Petitioner qualified for a two-point acceptance of responsibility reduction under U.S.S.G. § 3E1.1(a), and Petitioner's offense level was sixteen or greater prior to the acceptance of responsibility reduction; (2) move to dismiss at sentencing all other Counts of the indictment pending against Petitioner; (3) recommend at sentencing that no adjustment be made pursuant to U.S.S.G. § 3B1.1 for Petitioner's role in the offense.  Id. at 3-4.  The parties also agreed that for purposes of calculating a base offense level under U.S.S.G. § 2D1.1, Petitioner's offense involved methamphetamine and heroin, for a converted drug weight of at least 30,000 kilograms but less than 90,000 kilograms of marijuana.  Id. at 4; doc. no. 272 ("Rule 11 Tr."), pp. 9,16, 19.

Petitioner's plea agreement contained the following factual basis for his guilty plea:

> Beginning on a date at least as early as December 2019, up to and including the return date of this indictment, the precise dates being unknown, in Richmond and Columbia Counties, within the Southern District of Georgia, and elsewhere,

> the defendant, JAYSON DWAYNE WHEATLEY aided and abetted by others known and unknown, did knowingly and intentionally combine, conspire, confederate and agree together with each other, and with others known and unknown, to possess with intent to distribute and to distribute controlled substances.  All in violation of Title 21, United States Code, Section 846.

Plea Agreement, p. 2.  With his signature on the plea agreement, Petitioner agreed he read and carefully reviewed it with Mr. Rollins, understood each provision, voluntarily agreed to it, and "stipulate[d] that the factual basis set out therein is true and accurate in every respect."  Id. at 10.

By signing the plea agreement, Petitioner agreed to "entirely waive[] his right to a direct appeal of his conviction and sentence on any ground" unless the Court (1) sentenced him above the statutory maximum, (2) sentenced him above the advisory Sentencing Guidelines range, or (3) the government appealed the sentence.  Id. at 6.  Further, Petitioner waived his right to collaterally attack his conviction and sentence on any ground other than ineffective assistance of counsel.  Id. at 6-7.  By signing the plea agreement, Petitioner additionally attested he "read and carefully reviewed this agreement" with Mr. Rollins and "that his attorney has represented him faithfully, skillfully, and diligently, and [Petitioner] is completely satisfied with the legal advice given and the work performed by his attorney."  Id. at 8, 10.

At the guilty plea hearing, United States District Judge J. Randal Hall first confirmed Petitioner knew he was in court to change his previous plea of not guilty to the conspiracy charge in Count One of the Indictment to guilty, and no one had threatened or pressured Petitioner into pleading guilty.  Rule 11 Tr. 2.  Judge Hall reviewed the conspiracy charge to which Petitioner was pleading guilty, as well as the other Counts with which he had been charged in the indictment.  Id. at 5-6.  Under oath, Petitioner agreed with Judge Hall that he had reviewed the charges, and in particular Count One, with Mr. Rollins, had as much time as

he needed to talk with Mr. Rollins, and was satisfied with the help Mr. Rollins had provided. Id. at 6-7.  When Judge Hall explained the elements of the offense charged in Count One that the government would have to prove to convict Petitioner at trial, Petitioner confirmed he understood and admitted the government would be able to prove those elements.  Id. at 14; Plea Agreement, p. 1.

Judge Hall explained the rights Petitioner would be waiving by pleading guilty, and Petitioner affirmed he clearly understood those rights.  Rule 11 Tr. 7-8.  Among the rights explained, Judge Hall reviewed the right to trial by jury, the presumption of innocence, the government's burden to prove guilt beyond a reasonable doubt, the right to present and cross-examine witnesses, and the right to remain silent.  Id.  Judge Hall confirmed that other than the promises by the government in the plea agreement, no one had promised him anything else. Id. at 9.

Judge Hall also specifically reviewed the appeal and collateral attack waiver provisions of the Plea Agreement.  Id. at 9-10.  Judge Hall explained Petitioner would be waiving his right to appeal unless the sentence exceeded the statutory maximum penalty or the applicable advisory Guidelines range, or if the government filed an appeal.  Id. at 10.  Judge Hall also specifically reviewed Petitioner was giving up his "right to collaterally attack [his] conviction and sentence in a post-conviction proceeding," with one exception that collateral attack waiver does not apply to a claim of ineffective assistance of counsel.  Id.

Judge Hall further explained the mandatory minimum, as well as the maximum, penalty for the charge to which Petitioner was pleading guilty and explained the role of the Sentencing Guidelines, emphasizing they were only advisory, and not mandatory.  Id. at 11-13.  The issue of the converted drug weight to be used for the Sentencing Guidelines calculation was

specifically addressed four separate times during the change of plea proceedings, (id. at 9, 10, 16, 19), and Petitioner confirmed he did not object to the use of the recommended "stipulated converted drug weight of 30,000 to 90,000 kilograms of marijuana." Id. at 16, 20. Furthermore, in response to a question asked by Judge Hall, Petitioner averred no one had made him any promise or prediction he would receive a specific sentence. Id. at 14. Petitioner also confirmed he agreed "to be bound by all the terms of the agreement" and [he] agree[d] that all the facts that are contained in the agreement are true and accurate." Id. at 9. Petitioner further confirmed under oath he had carefully reviewed the plea agreement with Mr. Rollins before signing it. Id.

With the agreement of Petitioner, Judge Hall heard a factual basis for the guilty plea by proffer from the government. Id. at 15. On February 19, 2020, one of Petitioner's co-defendants was arrested in Columbia County after officers located 600 grams of methamphetamine in his home, and the co-defendant identified Petitioner as the source of the drug. Id. at 15. On that same day, a search of a hotel room where a different co-defendant had been located in Richmond County was conducted, and that co-defendant identified Petitioner as his source for methamphetamine and heroin. Id. at 16. A third co-defendant also identified Petitioner as his source for twelve to fifteen ounces of methamphetamine weekly and approximately nine ounces of heroin every three weeks. Id. When Petitioner was arrested in a hotel parking lot on March 19, 2021, he had approximately 146 grams of methamphetamine actual on his person. Id. The government also stated additional case evidence had been recovered from cooperating defendants' Facebook records, phone dumps, search warrants, and other grand jury testimony. Id. The government specifically noted the parties had agreed to a stipulated converted drug weight of 30,000 to 90,000 kilograms of marijuana. Id.

Petitioner disagreed with the information in the government's proffer regarding how often he sold heroin to one of his co-defendants.[1]  Id. at 17.  Defense counsel was careful to clarify, however, that Petitioner was not denying he sold heroin, only that it was not "a regular thing."  Id.  Mr. Rollins explained, "He is, basically, saying that the weights that we've been given are incorrect, but not that there wasn't any weight or that it wasn't in this range but that the numbers that the government stated are not correct in his remembering of this."  Id.  Judge Hall clarified that Petitioner agreed the drug transactions occurred, but just not as often as the government had stated.[2]  Id. at 17-18.  Thus, Judge Hall accepted Petitioner's knowing and voluntary guilty plea, finding Petitioner was competent, fully understood the charge in Count One, as well as the statutory punishment and jury rights which he knowingly and voluntarily waived.  Id. at 18.

### C.   Sentencing

The United States Probation Office prepared a Presentence Investigation Report ("PSI") which set Petitioner's Total Offense Level at thirty-three, Criminal History Category at V, and a Guidelines imprisonment range of 210 to 262 months.  PSI ¶¶ 37, 89.  The offense

---

[1] It appears Petitioner may have misheard what the government said, as his stated disagreement was that he did not sell the heroin every week. Rule 11 Tr. 17.  The transcript reveals the government actually stated Petitioner sold approximately nine ounces of heroin to one of his co-defendants every *three* weeks.  Id. at 16 (emphasis added).  The discrepancy, however, is immaterial, as Judge Hall confirmed that regardless of the number of transactions, the fact that the transactions occurred was accurate.  Id. at 17-18.  As discussed herein, the parties stipulated to the drug amount to be used for the Sentencing Guidelines calculation.

[2] The government also followed up with the clarification that the parties had agreed to a stipulated amount of converted drug weight that was more than sufficiently supported by the evidence of the amount of methamphetamine and/or heroin involved in the case.  Id. at 19.  Both parties again confirmed to Judge Hall that the agreed upon amount of converted drug weight was set forth – and not objected to – as part of the plea agreement.  Id. at 19-20.

level was calculated based on the stipulated converted drug weight of 30,000 to 90,000 kilograms and a three-level reduction for acceptance of responsibility.   PSI ¶¶ 28, 35-37. The statutory minimum term of imprisonment for Count One was ten years, and the maximum sentence was life in prison.  PSI ¶ 88.  Neither Petitioner nor the government raised objections to the PSI.  PSI Addendum; doc. no. 273 ("Sent. Tr."), pp. 2-3.

At the February 14, 2023 sentencing, Judge Hall confirmed Petitioner and Mr. Rollins had reviewed the PSI and had no outstanding objections.  Sent. Tr. 2-3.  Hearing no objections from either side, Judge Hall adopted the factual statements in the PSI, as well as the conclusions contained therein, as his own.[3]  Id. at 3.  Thus, the advisory Guidelines range was 210 to 262 months of imprisonment.  Id.

Although Petitioner did not file objections to the PSI, Mr. Rollins pointed out areas in the criminal history where he argued there had been "some overrepresentation," including two traffic violations from 2010.  Id. at 4-5 (citing PSI ¶¶ 43, 44).  Mr. Rollins also specifically raised the two points Petitioner earned for a 2017 Family Violence Act conviction, for which he was on probation when the acts forming the basis of the federal charge to which Petitioner pleaded guilty commenced.  Id. at 5-6 (citing ¶ 48).  According to Mr. Rollins's argument, "two points for an eight-day overlap" on a charge that was not of the same type of this federal offense was a "draconian interpretation" resulting in a "quite harsh" outcome for Petitioner's sentence calculation.  Id.  Specifically, had Petitioner not earned those additional four criminal history points, his Guidelines range would have been 168 to 210 months, as opposed to 210 to 262 months.  Id. at 10.

---

[3]At sentencing, facts not objected to in the PSI are deemed admitted.  See United States v. Bennett, 472 F.3d 825, 833-34 (11th Cir. 2006) (per curiam).

Petitioner also addressed the Court.  Id. at 8-10.  He apologized to the Court and his family for his actions.  Id. at 8-9.  Petitioner explained he had a hard time taking care of his family after the death of his wife, and he made poor choices.  Id. at 9-10.  He asked the Court for mercy even though he "fell to [his] low desires" because his poor choices leading to his multiple arrests were not fair to his children.  Id. at 10.

The government argued for a middle to the top of range Guidelines sentence.  Id. at 16. In response to the arguments from Mr. Rollins about criminal history points, the government countered the probation offense points were not actually based on an eight-day overlap because Petitioner had been sentenced to consecutive twelve-month probation sentences, meaning that his probation sentence actually had several months remaining – not days – when his federal illegal activity commenced.  Id. at 13.  Moreover, Petitioner's "life of crime which included drugs, theft, and domestic violence" had evolved from age nineteen into the life of "a major drug dealer who was involved in dealing many, many kilos of methamphetamine and heroin"; that "drug dealing led to the death of at least one person that we know of."  Id.  Petitioner also had his minor son with him at the time of his arrest in a hotel parking lot with approximately 100 grams of methamphetamine.  Id. at 15.

After hearing remarks from all interested parties and discussing Petitioner's criminal history that had progressed into the substantial distribution of methamphetamine, marijuana, and heroin – while at times accompanied by his juvenile son and resulting in at least one death – Judge Hall sentenced Petitioner to 240 months of imprisonment.  Id. at 16.

### D.   Post-Conviction

In keeping with the terms of the plea agreement, Petitioner did not file a direct appeal. On the same day as sentencing, Mr. Rollins and Petitioner signed a post-conviction

consultation certification in which they both attested that after Mr. Rollins had (1) explained to Petitioner the appeal process, including the right to a direct appeal, (2) advised Petitioner about the advantages and disadvantages of pursuing an appeal, and (3) inquired of Petitioner whether he wanted to file an appeal, Petitioner had decided not to file an appeal.  (Doc. no. 214.)

On January 25, 2024, Judge Hall *sua sponte* reduced Petitioner's sentence from 240 months to 215 months based on a Sentencing Guidelines range that had been lowered and made retroactively applicable to qualifying defendants such as Petitioner.  (Doc. no. 266.)

**E.    § 2255 Proceedings**

Petitioner timely filed the instant § 2255 motion to vacate, set aside, or correct his sentence, raising seven separate claims, which the Court has grouped by topic as follows:[4]

(1)    His guilty plea was not knowingly and voluntarily entered because counsel provided ineffective assistance by:

(a) failing to investigate Petitioner's "side of the story" and review all evidence with him; and

(b) failing to review Petitioner's guilty plea with him.

(2)    Counsel provided ineffective assistance at sentencing by:

(a) failing to challenge the purity of methamphetamine mixture attributed to him;

(b) failing to investigate Petitioner's probationary status, resulting in the attribution of additional criminal history points to his Guidelines calculation; and

(c) by not knowing about the First Step Act.

---

[4]For ease of reference, the Court refers to each topic as a numbered "Ground."

(3)     Counsel provided ineffective assistance after sentencing when he failed to file an appeal as instructed.

(4)     The quantity of drugs attributed to Petitioner at sentencing was inaccurate.

(5)     Although Petitioner pleaded guilty to one conspiracy count for which the drug quantity was determined based on a conversion table for marijuana, the "sentencing sheet" incorrectly states he pleaded guilty to a conspiracy involving methamphetamine, heroin, and marijuana.

(See generally doc. no. 267.)  Petitioner's motion does not ask to vacate his conviction of otherwise withdraw his guilty plea; rather he seeks only a lower sentence.  (Id. at 13.)

On March 29, 2024, Respondent filed a motion to dismiss, contending Petitioner's claims are barred by his knowing and voluntary guilty plea, barred by the collateral attack waiver in the plea agreement, or otherwise without merit.  (See generally doc. no. 274.)  After receiving multiple extensions of time, (doc. nos. 276, 278, 280), Petitioner filed his opposition to the motion to dismiss on July 1, 2024, (doc. no. 281).

## II.   DISCUSSION

### A.    No Evidentiary Hearing Required

Section 2255 does not require an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief . . . ."  Winthrop-Redin v. United States, 767 F.3d 1210, 1216 (11th Cir. 2014) (quoting 28 U.S.C. § 2255(b)).  "A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations."  Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989) (citation omitted).  Moreover, a hearing is not required "if the allegations are affirmatively contradicted by the record."  Martin v. United States, 949 F.3d 662, 670 (11th Cir. 2020) (citations omitted).

Stated otherwise, a petitioner is not entitled to an evidentiary hearing where he asserts "merely conclusory allegations unsupported by specifics or contentions that in the face of the record are wholly incredible." Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (citation omitted); see also Lynn v. United States, 365 F.3d 1225, 1238-39 (11th Cir. 2004). While ineffective assistance of counsel claims often require a hearing for development of an adequate record, an evidentiary hearing is not required every time such a claim is raised. Rosin v. United States, 786 F.3d 873, 878-79 (11th Cir. 2015); Vick v. United States, 730 F.2d 707, 708 (11th Cir. 1984). Rather, a petitioner must allege "reasonably specific, non-conclusory facts that , if true, would entitle him to relief." Griffith v. United States, 871 F.3d 1321, 1329 (11th Cir. 2017). Because Petitioner's claims are barred by his valid plea agreement, lack merit as a matter of law, or are otherwise affirmatively contradicted by the record, no evidentiary hearing is necessary.

**B.      Under Strickland v. Washington, Petitioner Bears a Heavy Burden on an Ineffective Assistance of Counsel Claim**

Ineffective assistance of counsel claims are subject to the two-part test enunciated in in Strickland v. Washington, 466 U.S. 668 (1984). See Massaro v. United States, 538 U.S. 500, 505 (2003); United States v. Armstrong, 546 F. App'x 936, 940 (11th Cir. 2013) (per curiam). Under the first prong, Petitioner must show "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. In this regard, "[a] petitioner must overcome a strong presumption of competence, and the court must give significant deference to the attorney's decisions." Hagins v. United States, 267 F.3d 1202, 1204-05 (11th Cir. 2001). It is not enough to show ignorance of the law. Harich v. Dugger, 844 F.2d 1464, 1470 (11th Cir. 1988) (en banc), partially overruled on other grounds, Davis v. Singletary, 119 F.3d 1471,

1481-82 (11th Cir. 1997).  "Petitioner must prove that the approach taken by defense counsel would not have been used by professionally competent counsel."  Id.  The purpose of this review is not to grade counsel's performance because, of course, every lawyer "could have done something more or different . . . .  But, the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'"  Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc).

Counsel is not required to "pursue every path until it bears fruit or until all available hope withers."  Puiatti v. Sec'y, Fla. Dep't of Corr., 732 F.3d 1255, 1280 (11th Cir. 2013) (quoting Foster v. Dugger, 823 F.2d 402, 405 (11th Cir. 1987)).  The impact of a guilty plea on the deficiency analysis is substantial both with respect to the scope and nature of the inquiry. As to scope, the Supreme Court explained as follows:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.  He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in McMann [v. Richardson], 397 U.S. 759 (1970)].

Tollett v. Henderson, 411 U.S. 258, 267 (1973).

As to nature of the inquiry, "counsel owes a lesser duty to a client who pleads guilty than to one who decides to go to trial . . . ."  Stano v. Dugger, 921 F.2d 1125, 1151 (11th Cir. 1991) (en banc) (quoting Wofford v. Wainwright, 748 F.2d 1505, 1508 (1984) (per curiam)). When a client pleads guilty, defense counsel "need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between accepting the prosecution's offer and going to trial."  Id.; see

also Carter v. United States, 288 F. App'x 648, 649 (11th Cir. 2008) (*per curiam*).  Counsel can impart such an understanding by offering his informed opinion on the best choice after examining the facts, circumstances, pleadings, and laws at issue.  Wofford, 748 F.2d at 1508. Because no absolute rules dictate reasonableness, counsel has no duty to investigate particular facts or defenses.  Chandler, 218 F.3d at 1317.  "A tactical decision is ineffective only if it was so patently unreasonable that no competent attorney would have chosen it."  Davidson v. United States, 213 F. App'x 769, 770 (11th Cir. 2007) (*per curiam*) (citation omitted).  As has been long-settled, "that a guilty plea must be intelligently made is not a requirement that all advice offered by the defendant's lawyer withstand retrospective examination in a post-conviction hearing."  McMann, 397 U.S. at 770.

The Supreme Court described at length the impact of a guilty plea on the Strickland deficiency analysis in Premo v. Moore, 562 U.S. 115, 125 (2011), when reversing a federal appeals court that found ineffective assistance by counsel who did not file a motion to suppress on behalf of a state defendant who pled guilty.  Courts must "respect their limited role in determining whether there was manifest deficiency in light of information then available to counsel."  Id.  Judicial restraint is critical because "bargains are the result of complex negotiations suffused with uncertainty, and defense attorneys must make careful strategic choices in balancing opportunities and risks."  Id. at 124.  Furthermore, "[t]he absence of a developed or an extensive record and the circumstance that neither the prosecution nor the defense case has been well defined create a particular risk that an after-the-fact assessment will run counter to the deference that must be accorded counsel's judgment and perspective when the plea was negotiated, offered, and entered."  Id. at 126.

"Given the strong presumption in favor of competence, the petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one." Fugate v. Head, 261 F.3d 1206, 1217 (11th Cir. 2001) (citation omitted). "The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer . . . could have acted, in the circumstances, as defense counsel acted . . . ." Ward v. Hall, 592 F.3d 1144, 1164 (11th Cir. 2010) (citing Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995)). The Court must resist "using the distorting effects of hindsight and must evaluate the reasonableness of counsel's performance from counsel's perspective at the time." Chandler, 218 F.3d at 1316; see also Waters, 46 F.3d at 1514 ("The widespread use of the tactic of attacking trial counsel by showing what might have been proves that nothing is clearer than hindsight – except perhaps the rule that we will not judge trial counsel's performance through hindsight.")

A court, however, "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697; see Brooks v. Comm'r, Ala. Dep't of Corr., 719 F.3d 1292, 1301 (11th Cir. 2013). Under the prejudice prong of Strickland, a petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

A petitioner must affirmatively prove prejudice that would undermine the results of the proceedings because "attorney errors come in an infinite variety and are as likely to be utterly

harmless in a particular case as they are to be prejudicial.  That the errors had some conceivable effect on the outcome of the proceeding is insufficient to show prejudice." Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004) (citations and internal quotations omitted). Indeed, the Court must examine the entirety of counsel's performance and the effect of such "in light of the record as a whole to determine whether it was reasonably probable that the outcome would have been different." Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989).

Moreover, in the context of a guilty plea, in addition to showing counsel's representation fell below an objective standard of reasonableness, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); Stephens v. Sec'y, Fla. Dep't of Corr., 678 F.3d 1219, 1225 (11th Cir. 2012).  In assessing whether a petitioner has met this standard, the Supreme Court has emphasized the "fundamental interest in the finality of guilty pleas." Hill, 474 U.S. at 58.  The prejudice determination is not based on whether a petitioner would have ultimately prevailed on the specific issues underlying the ineffectiveness claim, "but instead on whether [a petitioner] would have pleaded guilty had counsel's performance not been deficient." Davidson v. United States, 138 F. App'x 238, 240 (11th Cir. 2005) (per curiam).  In particular, "a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." Diveroli v. United States, 803 F.3d 1258, 1263 (11th Cir. 2015) (citing Padilla v. Kentucky, 559 U.S. 356, 372 (2010)).  Thus, Petitioner must show both that counsel's representation fell below an objective standard of reasonableness, *and* that there is a reasonable

probability that but for counsel's errors, he would have insisted on going to trial.  <u>Hill</u>, 474 U.S. at 56-59.

### C.   Petitioner Is Not Entitled to Relief on Any of the Pre-Plea Ineffective Assistance Claims in Ground One

Petitioner asserts Mr. Rollins provided ineffective assistance in the pre-plea phase of the case when he failed to:  (a) investigate Petitioner's "side of the story" and review all evidence with him; and (b) review Petitioner's guilty plea with him.  These claims are barred by the entry of a valid guilty plea, and in any event are devoid of merit.

### 1.   Entry of a Knowing and Voluntary Guilty Plea Bars Petitioner's Claims in Ground One

Once a guilty plea becomes final, unless the record demonstrates that the sentencing court lacked the power to enter the conviction or impose the sentence, a petitioner may only challenge the knowing, voluntary nature of the plea.  <u>United States v. Broce</u>, 488 U.S. 563, 569 (1989).  In conducting its analysis,  the Court starts with the proposition that a trial court may not accept a guilty plea without an affirmative showing on the record that the plea was intelligent and voluntary.  <u>Boykin v. Alabama</u>, 395 U.S. 238, 242-43 (1969).  The Eleventh Circuit has described the requirements for a valid guilty plea as follows:  "The Fourteenth Amendment Due Process Clause requires that a plea of guilty be knowingly and voluntarily entered because it involves a waiver of a number of the defendant's constitutional rights.  A plea of guilty cannot support a judgment of guilt unless it was voluntary in a constitutional sense."  <u>United States v. Brown</u>, 117 F.3d 471, 476 (11th Cir. 1997).  A guilty plea may be involuntary in a constitutional sense if a defendant is coerced into his plea, if a defendant does not understand the nature of the constitutional protections he is waiving, or "if a defendant has such an incomplete understanding of the charge that his plea cannot stand as an intelligent

admission of guilt." Id.  Thus, a defendant must receive "real notice of the true nature of the charged crime." Id.

The Eleventh Circuit has further explained that, for a guilty plea to be knowingly and voluntarily made, the court accepting the guilty plea must "specifically address three 'core principles,' ensuring that a defendant (1) enters his guilty plea free from coercion, (2) understands the nature of the charges, and (3) understands the consequences of his plea." United States v. Moriarty, 429 F.3d 1012, 1019 (11th Cir. 2005) (*per curiam*) (citations omitted).  In addition, "a defendant who seeks reversal of his conviction after a guilty plea . . . must show a reasonable probability that, but for the error [under Rule 11 of the court accepting the guilty plea], he would not have entered the plea." Id. at 1020 (quoting United States v. Dominguez Benitez, 542 U.S. 74, 83 (2004)).

### 2.   Judge Hall's Colloquy with Petitioner Satisfied the Core Principles

Judge Hall informed Petitioner in clear terms of the charge to which was pleading guilty, and Petitioner testified he understood the charge and what the government would have to prove in order to convict him.  Rule 11 Tr. 5-6, 14.  Judge Hall also provided a detailed explanation of the rights Petitioner would forfeit by pleading guilty, and Petitioner affirmed he understood his decision to plead guilty would result in a waiver of these rights.  Id. at 7-8. Petitioner testified that other than the promises the government made in the plea agreement, no one had made promises to get him to plead guilty, and Judge Hall confirmed Petitioner's decision to plead guilty was not the result of force, pressure, threats or promises other than those in the plea agreement.  Id. at 2, 9.

Additionally, Judge Hall informed Petitioner of the possible penalty he faced upon conviction.  In particular, Judge Hall explained the mandatory minimum sentence of not less

than ten years, as well as the maximum sentence of life for being convicted of the drug conspiracy charge.  Id. at 11.  Petitioner also testified he had enough time to discuss the case with Mr. Rollins and was satisfied with the help he had received from him.  Id. at 6-7; see also Plea Agreement, p. 10. ("I have read and carefully reviewed this agreement with my attorney.").  Despite multiple opportunities, Petitioner expressed no hint of dissatisfaction with Mr. Rollins when he appeared before Judge Hall.

At the Rule 11 hearing, Petitioner also admitted to the facts presented by proffer from the government as the factual basis for the plea.  Rule 11 Tr. 15-17.  This proffer included information concerning Petitioner's involvement with his co-defendants selling heroin and methamphetamine in Richmond and Columbia Counties.  Id. at 15-16.  Mr. Rollins clarified Petitioner disputed the government's proffer on the amount of heroin and methamphetamine involved in the drug transactions, but Petitioner did not contest the fact that the drug transactions occurred.  Id. at 17-18.  In any event, the government also explained the parties had stipulated to a converted drug weight of 30,000 to 90,000 kilograms of marijuana, and Judge Hall confirmed Petitioner had agreed to that converted drug weight as part of his plea agreement and had no objection to the stipulated quantity.  Id. at 16-19.  Judge Hall confirmed Petitioner wanted to plead, and was in fact, guilty of the conspiracy charged.  Id.

Thus, Judge Hall's thorough plea colloquy ensured Petitioner understood both the nature of the charge and the consequences of his guilty plea, and that Petitioner was not coerced into pleading guilty.  See Moriarty, 429 F.3d at 1019.  Accordingly, the Court concludes Petitioner entered a knowing and voluntary guilty plea.

In sum, Petitioner has not shown through belated protestations, (doc. no. 281, pp. 2-3), which contradict his prior sworn statements, a reasonable probability that but for any alleged

error at the Rule 11 proceeding he would not have entered his guilty plea.  See <u>Dominguez Benitez</u>, 542 U.S. at 83.  "[S]olemn declarations in open court carry a strong presumption of verity" and "constitute a formidable barrier in any subsequent collateral proceedings." <u>Blackledge v. Allison</u>, 431 U.S. 63, 74 (1977); <u>see also</u> <u>United States v. Rogers</u>, 848 F.2d 166, 168 (11th Cir. 1988) ("[W]hen a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false.")**;** <u>United States v. Stitzer</u>, 785 F.2d 1506, 1514 n.4 (11th Cir. 1986) (noting that "if the Rule 11 plea-taking procedure is careful and detailed, the defendant will not later be heard to contend that he swore falsely"). Petitioner's after-the-fact, self-serving allegations simply cannot overcome his prior sworn statements to Judge Hall.  As Petitioner's plea was knowing and voluntary, his claims in Ground One are barred.

Nevertheless, because Petitioner alleges constitutionally ineffective assistance from Mr. Rollins led to the entry of his guilty plea, the Court addresses the merits of Petitioner's Ground One claim below.  <u>See, e.g.</u>, <u>Wofford</u>, 748 F.2d at 1508 (explaining "accused who has not received reasonably effective assistance from counsel in deciding to plead guilty cannot be bound by his plea" (citations omitted)).

### 3.	Even if the Claims Were Not Barred by Entry of a Valid Guilty Plea, the Claims Are Without Merit

In Ground One(a) and (b), Petitioner claims Mr. Rollins did not adequately investigate the case and review all the evidence with him, as well as failed to review the guilty plea with him.  Most difficult for Petitioner to overcome is his prior sworn assertions to Judge Hall he had enough time to discuss the case and terms of the plea agreement with Mr. Rollins and was entirely satisfied with his preparation and handling of the case.  Rule 11 Tr. 6-7; <u>see also</u> Plea

Agreement, pp. 8, 10.  These sworn assertions contradict his current claims that his meetings with Mr. Rollins prior to the guilty plea proceedings were devoid of substantive discussions about the merits of his case and the terms of the plea agreement.

Even now Petitioner offers no particularized information about any potential defense or exculpatory evidence and fails to specify information conveyed to Mr. Rollins that was not investigated.  Petitioner's sworn assertions to Judge Hall also belie the contention Mr. Rollins did not review the terms of the plea agreement.  As described in detail above, Judge Hall thoroughly reviewed the plea agreement at the Rule 11 proceeding.  Petitioner's signature on the plea agreement attests Petitioner "read and carefully reviewed this agreement with my attorney."  Plea Agreement, p. 10.  Moreover, Judge Hall specifically reviewed the rights Petitioner was waiving by pleading guilty, including the appeal and collateral attack waiver provisions of the plea agreement prior to accepting the guilty plea, and Petitioner never suggested he did not understand the consequences of his guilty plea.  Petitioner does not provide any specific factual information that either Judge Hall or Mr. Rollins did not adequately review or pursue that would have changed the outcome of the case or caused him to go to trial rather than plead guilty, particularly in light of Petitioner's attestation of guilt at the Rule 11 proceedings.  Petitioner has shown neither deficient performance nor prejudice.

In sum, "The law permits no one to accept the benefit of a guilty-plea deal, suffer buyer's remorse, then go back and criticize pretrial defense efforts that were cut off by agreeing to the deal."  Harris v. United States, No. CV 410-69/CR 407-285, 2011 WL 1740702, at *5 (S.D. Ga. Apr. 11, 2011), adopted by, 2011 WL 1740306 (S.D. Ga. May 5, 2011).  Petitioner is not entitled to relief on either of his claims in Ground One.

**D.     Petitioner Is Not Entitled to Relief on the Sentencing Ineffective Assistance Claims in Ground Two**

Petitioner also asserts Mr. Rollins provided ineffective assistance at sentencing when he failed to: (a) challenge the purity of the methamphetamine mixture attributed to him; (b) investigate Petitioner's probationary status, resulting in the attribution of additional criminal history points to Guidelines calculation; and (c) have knowledge of the First Step Act.

At sentencing, Judge Hall confirmed Petitioner had reviewed the PSI.  Sent. Tr. 2-3. Judge Hall also asked if there were any objections, to which both the government and the defense confirmed there were not.  Id.; see also PSI Addendum.  When asked if he had anything to say prior to sentencing, Petitioner apologized to the Court and his family for his actions, explained various life circumstances that led him to make poor choices, and asked for mercy. Sent. Tr. 8-10.  When given the chance to speak directly to Judge Hall at sentencing, Petitioner never mentioned any issues about the information in the PSI or the calculation of his Guidelines sentencing range.  Id.

Second, Mr. Rollins presented multiple arguments in mitigation.  Mr. Rollins pointed out areas in the criminal history where he argued there had been "some overrepresentation," including two traffic violations from 2010 and the probation sentence that resulted in earning "two points for an eight-day overlap."  Id. at 4-6 (citing PSI ¶¶ 43, 44, 48).  Petitioner argues, without benefit of any detail, that Mr. Rollins should have challenged the purity of the methamphetamine mixture attributed to him and should have investigated his probationary status.  There is no explanation what purity level should have been used for sentencing or how any such different purity level would have resulted in a change to his sentence.  (See doc. no. 267-1, p. 6; doc. no. 281, p. 6.)  This is a particularly glaring omission in light of the stipulation

21

in the plea agreement as to the converted drug weight to be used in calculating the sentence. Plea Agreement, p. 4; see also Rule 11 Tr. 9, 16, 19-20 (discussing stipulated drug quantity as part of plea agreement).  Moreover, Mr. Rollins did address Petitioner's probationary status that raised his criminal history and argued those additional points resulted in an unfairly harsh sentence.  Sent. Tr. 5-6.  In any event, the government clarified the additional points were warranted because Petitioner actually had two, consecutive twelve-month probationary sentences imposed, so the additional points were properly imposed regardless of whether any probation warrants were dismissed that could have led to an earlier termination date on one probationary sentence.  Id. at 13.

As to Petitioner's claim regarding the First Step Act, he provides absolutely no information as to how the statute – which provides a "safety valve" to allow certain drug offenders with qualifying criminal histories to be sentenced to less than the required mandatory minimum sentence – applies to him.[5]  Moreover, Judge Hall, on the Court's own motion, has already reduced Petitioner's prison sentence from 240 months to 215 months, based on a change to the Guidelines made retroactively applicable to Petitioner.[6]  (See doc. no. 266.) Thus, Petitioner's sentence has already been adjusted to lower the "status points" that put him in a higher Criminal History category.

---

[5]As part of its ruling in Pulsifer v. United States, 601 U.S. 124, 144 S. Ct. 718, 723-25 (U.S. Mar. 15, 2024), the United States Supreme Court provided a general overview of the First Step Act, Pub. L. 115-391, 132 Stat. 5221, and its impact on sentencing.

[6]The change to the Guidelines limits the impact of "status points," which increase criminal history points based on a defendant committing his instant offense while under a laundry list of criminal justice sentences to include probation.  U.S.S.G. § 1B1.10 cmt. n.7.

In sum, all of the ineffective assistance claims based on the performance of Mr. Rollins at sentencing are too conclusory and lacking in any detail to provide relief.  See Boyd v. Comm'r, Ala. Dep't of Corrs., 697 F.3d 1320, 1333–34 (11th Cir. 2012); Wilson v. United States, 962 F.2d 996, 998 (11th Cir. 1992) (*per curiam*) ("Conclusory allegations of ineffective assistance are insufficient." (citation omitted)); Pio v. United States, No. 13-23666-CIV, 2014 WL 4384314, at *3 (S.D. Fla. Sept. 3, 2014) (same) (collecting cases);   see also Blackledge, 431 U.S. at 74 (explaining presentation after declarations made at change of plea hearing "of conclusory allegations unsupported by specifics is subject to summary dismissal").  Petitioner has not shown deficient performance or prejudice from Mr. Rollins's actions at sentencing to support a valid claim for relief under Strickland, and none of the claims in Ground Two form a valid basis for relief.

**E.**    **Petitioner Is Not Entitled to Relief on His Lost Appeal Claim in Ground Three**

Petitioner is also not entitled to relief based on his claim that Mr. Rollins failed to file an appeal as instructed.  Cases in which a criminal defendant explicitly instructs his attorney to file a notice of appeal are subject to a bright-line rule.  "[A]n attorney's failure to file an appeal after the defendant requests him to do so entitles the defendant to an out-of-time appeal, even without a showing that there would have been any viable grounds for an appeal." Montemoino v. United States, 68 F.3d 416, 417 (11th Cir. 1995); see also Roe v. Flores-Ortega, 528 U.S. 470, 477-78 (2000) (holding it is professionally unreasonable for attorney to fail to follow defendant's express appeal instructions).  Thus, if the Court determines Mr. Rollins failed to honor a request to file a notice of appeal, it must grant Petitioner's § 2255 motion on that ground.  Furthermore, even in cases where a defendant does not specifically

instruct his counsel to file an appeal, the Court "must still determine 'whether counsel in fact consulted with the defendant about an appeal,'" and if counsel did not consult, whether there was a duty to do so.  Thompson v. United States, 504 F.3d 1203, 1206-08 (11th Cir. 2007) (citing Flores-Ortega, 528 U.S. at 478, 480).

On February 14, 2023, the day of sentencing, Petitioner signed a Post-Conviction Consultation Certification, indicating Mr. Rollins explained the appellate process, advised him about the advantages and disadvantages of pursuing an appeal, and thoroughly inquired into his interest in appealing his conviction.  (Doc. no. 214.)  Petitioner indicated he decided not to file an appeal after Mr. Rollins explained the consequences of not doing so.  Id.  Failing to acknowledge he signed this Post-Conviction Consultation Certification, and without providing any detail, Petitioner now asserts he and unidentified family members instructed Mr. Rollins to file an appeal, but Mr. Rollins said he did not handle appeals and would not file one on Petitioner's behalf.  (Doc. no. 267-1, p. 14; doc. no. 281, p. 7.)  Notably, even when faced with Respondent's motion to dismiss, Petitioner does not dispute he signed the Post-Conviction Consultation Certification or otherwise allege he directed Mr. Rollins to file an appeal at some time after signing the document.  (Doc. no. 281, pp. 4-5.)  Rather, he completely omits any reference to the signed document and provides no specific timeline as to when he allegedly requested an appeal be filed.  (See id.)

In light of the signed Post-Conviction Consultation Certification, and the absence of any contradictory factual details, Petitioner is not entitled to relief on his claim that Mr. Rollins failed to file an appeal as instructed.  See Graham v. United States, No. 217-cr-2, 2021 WL 5858585, at *11 (S.D. Ga. Nov. 12, 2021) (rejecting lost appeal claim and concluding "the undisputed post-conviction consultation certification establishes [petitioner's] informed

decision not to take an appeal and thwarts any claim [petitioner] makes counsel was ineffective for failing to file an appeal" (citations omitted)), *adopted by* 2021 WL 5855839 (S.D. Ga. Dec. 8, 2021), *certif. of appealability denied* 2023 WL 7457120 (11th Cir. June 28, 2023); <u>Greene v. United States</u>, No. 116-cr-56, 2018 WL 3748420, at *9 (S.D. Ga. July 6, 2018), *adopted by* 2018 WL 3747452, at *1 (S.D. Ga. Aug. 7, 2018) (overruling objections to rejection of lost appeal claim where "notice of post-conviction consultation certification affirmatively contradicts [p]etitioner's self-serving contention he instructed trial counsel to file a notice of appeal") (Hall, J.); <u>Newham v. United States</u>, No. 214-cr-12, 2017 WL 1823152, at *9 (S.D. Ga. May 5, 2017) (rejecting lost appeal claim based on filing of uncontested filing of post-consultation certificate), *adopted by* 2017 WL 2589584 (S.D. Ga. June 14, 2017); <u>see also</u> <u>Allen v. United States</u>, No. 16-17232-C, 2017 WL 5999039, at *5 (11th Cir. June 2, 2017) (denying COA on lost appeal claim where form filed after sentencing and signed by petitioner stated she had explicitly been told about right to appeal and decided not to appeal and later assertion to contrary in § 2255 motion unsupported by any detail).

Accordingly, Petitioner is not entitled to relief on his lost appeal claim in Ground Three.

### F.   Petitioner Is Not Entitled To Relief on His Drug Quantity and Type Claims in Grounds Four and Five

Petitioner claims in Ground Four that the quantity of drugs attributed to him for sentencing purposes was incorrect.  In his Fifth Ground for relief, Petitioner asserts his "sentencing sheet" incorrectly states he pleaded guilty to a conspiracy involving methamphetamine, heroin, and marijuana because his sentence was based on drug quantity determined by using a conversion table for marijuana.

### 1.   Valid Collateral Attack Waiver Bars Claims

It is well settled that waiver of the right to attack a sentence and conviction on direct appeal or by habeas petition is enforceable if the waiver is knowing and voluntary.  United States v. Warner-Freeman, 270 F. App'x 754, 757 (11th Cir. 2008) (*per curiam*); United States v. Weaver, 275 F.3d 1320, 1333 (11th Cir. 2001); United States v. Bushert, 997 F.2d 1343, 1345 (11th Cir. 1993); see also Vaca-Ortiz v. United States, 320 F. Supp. 2d 1362, 1364-67 (N.D. Ga. 2004) (applying case law on waiver of direct appeal to waiver of collateral attack by § 2255 motion).  "To establish the waiver's validity, the government must show either that (1) the district court specifically questioned the defendant about the provision during the plea colloquy, or (2) it is manifestly clear from the record that the defendant fully understood the significance of the waiver."  Weaver, 275 F.3d at 1333.  If the government meets this burden, then the waiver is valid and enforceable.  See United States v. Pease, 240 F.3d 938, 942 (11th Cir. 2001) (enforcing waiver provision where defendant was specifically questioned during plea proceedings about waiver); United States v. Howle, 166 F.3d 1166, 1168-69 (11th Cir. 1999); United States v. Benitez-Zapata, 131 F.3d 1444, 1446-47 (11th Cir. 1997).

Here, the plea agreement signed and verified by Petitioner explicitly set forth that he was voluntarily waiving his right to a direct appeal of the conviction and sentence, as well as his right to collaterally attack the same on any ground other than ineffective assistance of counsel.  Plea Agreement, pp. 6-7.  None of the exceptions to the waiver apply because Petitioner's sentence did not exceed the statutory maximum of life in prison or the advisory Guidelines range as determined by Judge Hall after reviewing the PSI, and the government did not appeal.  Id.  Moreover, Judge Hall reviewed the appeal and collateral attack waiver provisions in the plea agreement during the change of plea proceedings and confirmed

Petitioner understood and had agreed to the terms described.  Rule 11 Tr. 9-10.

The record before the Court demonstrates Petitioner's agreement to the collateral attack waiver was knowing and voluntary.  Likewise, as discussed above, the guilty plea itself was knowing and voluntary.  Therefore, enforcement of this valid collateral attack waiver bars Petitioner's claims in Grounds Four and Five.  See United States v. Martin, 549 F. App'x 888, 889-90 (11th Cir. 2013) (per curiam) (refusing to consider claims of PSI errors based on knowing and voluntary sentence appeal waiver); Brown v. United States, 256 F. App'x 258, 262 (11th Cir. 2007) (per curiam) (refusing to consider merits of sentencing argument in § 2255 proceeding based on valid sentence-appeal waiver provision in plea agreement); Williams v. United States, 396 F.3d 1340, 1342 (11th Cir. 2005) (enforcing appeal waiver where challenge based on claim of ineffective assistance at sentencing).

### 2. Claims Are Also Procedurally Defaulted Because They Were Not Raised on Direct Appeal

A petitioner seeking collateral relief must clear "a significantly higher hurdle than would exist on direct appeal."  Brown v. United States, 720 F.3d 1316, 1333 (11th Cir. 2013) (quoting United States v. Frady, 456 U.S. 152, 166 (1982)).  "Generally, if a challenge to a conviction or sentence is not made on direct appeal, it will be procedurally barred in a § 2255 challenge."  United States v. Montano, 398 F.3d 1276, 1279-80 (11th Cir. 2005) (citing Mills v. United States, 36 F.3d 1052, 1055 (11th Cir. 1994)).  "A ground of error is usually 'available' on direct appeal when its merits can be reviewed without further factual development."  Mills, 36 F.3d at 1055.  In other words, Petitioner may not use this collateral attack as "a surrogate for a direct appeal."  Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004) (citation omitted).  The procedural bar to claims which could have been raised on

27

direct appeal, but were not, may be avoided if the petitioner establishes one of two exceptions: (1) cause for the default and actual prejudice from the alleged error, or (2) a fundamental miscarriage of justice, covering "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." Mills, 36 F.3d at 1055-56 (citing Murray v. Carrier, 477 U.S. 478, 496 (1986)).  The actual innocence exception is exceedingly narrow in scope and must encompass factual innocence, not legal insufficiency. Bousley v. United States, 523 U.S. 614, 623-24 (1998).

In addition, when a defendant has been given an opportunity to review his PSI and to be heard at sentencing, his failure to raise a challenge to the PSI at sentencing will preclude him from raising the challenge in a § 2255 motion.  United States v. Peloso, 824 F.2d 914, 915 (11th Cir. 1987).   Furthermore, alleged errors concerning the Sentencing Guidelines are not generally cognizable on collateral attack.  Spencer v. United States, 773 F.3d 1132, 1138-40 (11th Cir. 2014); Montemoino v. United States, 68 F.3d 416, 417 (11th Cir. 1995) (*per curiam*).

Here, Petitioner did not object to the PSI, (Sent. Tr. 2-3), and as set forth above, the drug conversion quantities were discussed at length during the Rule 11 proceedings and the within the Guidelines sentence was based on a *stipulated* converted drug weight, (Rule 11 Tr. 9, 10, 16, 19; see also Plea Agreement, p. 4).  Nor did Petitioner raise his claims in Grounds Four and Five on direct appeal.  As discussed in detail above, there is no merit to his lost appeal claim, and he validly waived his right to a direct appeal.  As these sentencing claims were not raised on direct appeal, they are procedurally defaulted.

Other than the assertion rejected above that counsel did not file an appeal when Petitioner requested him to do so, there has been no argument, let alone establishment of cause

and prejudice for the procedural default, and he has not claimed he is actually innocent of the conspiracy to which he pled guilty.  Indeed, as discussed above, there is no valid ineffective assistance claim to excuse the default, and Petitioner's requested relief is not vacatur of his conviction but rather re-sentencing, (doc. no. 267-1, p. 13).  As neither of these two sentencing claims are constitutional, jurisdictional, or present an error so fundamental as to have resulted in a complete miscarriage of justice, they are not reviewable in these § 2255 proceedings.  See United States v. Addonizio, 442 U.S. 178, 186 (1979) ("There is no claim of a constitutional violation; the sentence imposed was within the statutory limits; and the proceeding was not infected with any error of fact or law of the 'fundamental' character that renders the entire proceeding irregular and invalid.")

### 3.      Even if the Claims Were Not Barred, They Are Without Merit

Petitioner asserts, without benefit of any detail, that the quantity of drugs used by the Probation Office to calculate the Guidelines sentence in the PSI was inaccurate; he does not offer any argument as to what he believes the quantity should have been.  Rather, his arguments are based on conclusory assertions the drug quantity was incorrect.  (See, e.g., doc. no. 281, p. 4 ("There is simply no way at all that Movant was responsible for that amount of drugs period, nor anywhere near that amount at all.").)  Moreover, as discussed in detail above, Petitioner agreed to a stipulated quantity of drugs for purposes of calculating his sentence.  Plea Agreement, p. 4.  The drug quantity issue was addressed multiple times by Judge Hall at the change of plea proceedings, and Petitioner either did not object, or affirmatively agreed, to the stipulated amount.  Rule 11 Tr. 9, 16, 19-20.  Similarly at sentencing, Petitioner did not object to any information in the PSI, including the quantity of drugs used to calculate this sentence.  Sent. Tr. 2-3.  There is no merit to the claim in Ground Four.

As to Ground Five, Petitioner argues that his "sentencing sheet" – presumably the Judgment – conflicts with his plea agreement because it shows a conviction for participation in a conspiracy involving methamphetamine, heroin, and marijuana, when he agreed to plead guilty and have his sentence determined based on a converted drug weight of at least 30,000 kilograms but less than 90,000 kilograms of only marijuana.  There is no discrepancy.

The indictment charged Petitioner in Count One with conspiracy to possess with intent to distribute and to distribute controlled substances, including 500 grams or more of a mixture containing a detectable amount of methamphetamine, 50 grams of methamphetamine (actual), and an amount of heroin and marijuana.  (See doc. no. 3.)  The Judgment accurately reflects a conviction for this Count based on Petitioner's valid guilty plea.  As part of that guilty plea, Petitioner and the government agreed to a stipulated type and quantity of drugs to be used as the basis for calculating Petitioner's sentence:  30,000 to 90,000 kilograms of marijuana.  Plea Agreement, p. 4; Rule 11 Tr. 9, 16, 19-20.  The PSI calculated the Guidelines sentence based on that agreement.  PSI ¶¶ 21, 28.  Petitioner did not object to anything in the PSI, and Judge Hall adopted the calculation at sentencing.  Sent. Tr. 2-3.  There is simply no error in the Judgment with respect to Count One to which Petitioner pled guilty and the stipulated amount of marijuana Petitioner agreed to as the basis for calculating his sentence.  Ground Five is without merit.

### III.   CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** the motion to dismiss be **GRANTED**, (doc. no. 274), the § 2255 motion be **DISMISSED** without

holding an evidentiary hearing, this case be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

SO REPORTED and RECOMMENDED this 2nd day of August, 2024, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA